**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KEYBANK NAT'L ASS'N as Executor of the Est. of Adele Hackenberger, <br>　　　Plaintiff, <br><br>　　　v. <br><br> AMERICAN SAFETY RISK RETENTION GROUP, INC., <br>　　　Defendant. | CIVIL ACTION NO. <br> 3:18-CV-424 (JCH) <br><br> MAY 21, 2018 |

**RULING RE: REMAND TO STATE COURT**

**I.　INTRODUCTION**

On March 9, 2018, the defendant, American Safety Risk Retention Group, Inc. ("ASRRG"), removed this action from Connecticut Superior Court by filing a Notice of Removal in this court. See Notice of Removal (Doc. No. 1). On March 20, 2018, the court ordered ASSRG to show cause why this action should not be remanded to state court for lack of federal subject matter jurisdiction. See Order to Show Cause (Doc. No. 13). ASSRG responded to the Order to Show Cause on April 10, 2018, arguing that this court has federal question jurisdiction over the underlying Complaint and, in the alternative, has diversity jurisdiction over the Complaint. See generally Response to Order to Show Cause ("Def.'s Response") (Doc. No. 14). On April 20, 2018, the plaintiff, KeyBank National Association ("KeyBank"), replied to the defendant's Response, arguing that this court does not have subject matter jurisdiction to hear the Complaint filed in Connecticut Superior Court. See generally Plaintiff's Response re Response to Order to Show Cause ("Pl.'s Reply") (Doc. No. 17). On April 27, 2018, ASRRG moved for leave to file a Sur-Reply, which Motion is hereby granted. See

1

Motion for Leave to File Sur-Reply (Doc. No. 18); Defendant's Sur-Reply to Reply to Response ("Def.'s Sur-Reply") (Doc. No. 18-1).

For the reasons set forth below, this case is remanded to state court.

## II.     BACKGROUND

On February 9, 2018, KeyBank initiated an action against ASRRG in Connecticut Superior Court as executor of the Estate of Adele Hackenberger, a resident of Connecticut. See Complaint (Doc. No. 1-1) at 3. In the two-count Complaint, KeyBank alleges violations of Connecticut General Statutes sections 38a-321 and 42-110a et seq. Id. at 3–5. In brief, KeyBank alleges that it has obtained a judgment in the amount of $271,252.46 from a third-party, Tankworks Removal and Replacement, LLC ("Tankworks"), a business incorporated in Connecticut, as the result of a negligent act committed by Tankworks. Id. at 3. KeyBank further alleges that ASRRG insured Tankworks at the time of the judgment, and that ASRRG and Tankworks wrongfully attempted to cancel or annul the policy after Tankworks committed the negligent act in order to deprive KeyBank of a source of payment of the judgment. Id. at 4–5.

## III.    LEGAL STANDARD

Under title 28 section 1441 of the United States Code, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party removing a case to federal court bears the burden of showing that removal is appropriate. See United Food & Commercial Workers Union, Local 919 v. Centermark Props., 30 F.3d 298, 301 (2d Cir. 1994). "[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." Bell v. Doe, No.

2

3:18-cv-376 (VAB), 2018 WL 2016855, at *2 (D. Conn. May 1, 2018) (quoting Fallstrom v. L.K. Comstock & Co., No. 3:99-cv-952 (AHN), 1999 WL 608835, at *1 (D. Conn. July 13, 1999)).

## IV. DISCUSSION

In its Notice of Removal, ASRRG makes two primary arguments in support of federal subject matter jurisdiction. First, ASRRG argues that the court has federal question jurisdiction pursuant to title 28 section 1331 of the United States Code because "the Complaint raises the federal question whether there can be a private right of action against foreign risk retention groups" under the Liability Risk Retention Act ("LRRA"), title 15 section 3901 et seq. of the United States Code. See Notice of Removal at 3–4. Second, ASRRG argues that the LRRA completely preempts the state law claims alleged by KeyBank such that federal question jurisdiction is created. Id. at 4–8. In its Response to the Order to Show Cause, ASRRG reiterates these claims and also argues, in a footnote, that this court has diversity jurisdiction pursuant to title 28 section 1332 of the United States Code. See Def.'s Response at 2 n.1.

The court addresses each of ASRRG's arguments in turn.

### A. Claims Raised in the Complaint

ASRRG urges the court to find that KeyBank's Complaint arises under federal law such that this court has federal question jurisdiction over the claims in the Complaint. See Def.'s Response at 3. Federal question jurisdiction typically attaches when federal claims are asserted in a complaint. See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning, 136 S. Ct. 1562, 1569 (2016). However, in a "special and small category of cases . . . a federal court has jurisdiction of a state-law claim" that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a

3

federal forum may entertain without disturbing any congressionally approved balance of federal and state power." Id. at 1569–70 (internal quotations and citations omitted). For example, in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, the Supreme Court concluded that the plaintiff's complaint arose under federal law because the plaintiff "premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law." 545 U.S. 308, 314–15 (2005). On these facts, the Supreme Court held that adequate notice within the meaning of a federal statute was "an essential element of [the plaintiff's] quiet title claim." Id. at 315.

KeyBank argues that its Complaint does not "arise under" federal law because the LRRA is pertinent only, if at all, as a defense to its Complaint. See Pl.'s Reply at 2–3. "Under the longstanding well-pleaded complaint rule . . . a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" Vaden v. Discover Bank, 556 U.S. 49, 60 (2009) (quoting Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908)). "Federal jurisdiction cannot be predicated on an actual or anticipated defense." Id.

The court has reviewed the arguments ASRRG has raised in its Notice of Removal, Response, and Sur-Reply as to the nature of the claims raised in KeyBank's Complaint and finds none of those arguments persuasive. KeyBank's Complaint alleges two causes of action, both of which are plainly state statutes. This case is distinguishable from, for example, Grable, in which the definition of proper notice under the federal tax law was "an essential element" of the state claim at issue. Grable, 545 U.S. at 315.

To illustrate, the court notes that, if ASRRG elected not to raise the LRRA in response to KeyBank's Complaint, the Connecticut Superior Court Judge deciding the state case would not be obligated to interpret the LRRA or any other federal statute. Therefore, unlike the complaint before the court in Grable, which necessarily raised the question of proper notice under federal tax law irrespective of what defenses, if any, were raised in that case, KeyBank's well-pleaded allegations do not "necessarily raise" federal law questions. In its Sur-Reply, ASRRG argues that "any court resolving the claim under the [Connecticut] direct action statute will need to answer the question whether a non-domiciliary risk retention group is subject to regulation by a state through its direct action statute." Def.'s Sur-Reply at 1. However, ASRRG has provided no argument or authority to explain why a state court would be compelled to consider the LRRA (absent ASRRG raising the LRRA as a defense), and the court knows of none.

ASRRG makes much of the Second Circuit opinion Wadsworth v. Allied Professionals Insurance Company, 748 F.3d 100 (2d Cir. 2014), in which the Second Circuit concluded that the LRRA created a defense to liability for risk retention groups under a New York statute.[1] See, e.g., Def.'s Response at 1–2, 4–5. Assuming, without deciding, that Wadsworth is directly applicable to the facts and law at issue in this case, that ruling goes only to the strength of a defense that ASRRG may raise, not to the existence of a federal question. To conclude otherwise would be to ignore the distinction that has repeatedly and emphatically been made in opinions constituting binding precedent on this court, including Supreme Court opinions. See, e.g., Vaden,

---

[1] The court notes that Wadsworth itself was a diversity action. See Wadsworth v. Allied Professionals Ins. Co., No. 5:10-CV-1566 (NAM/TWD), 2013 WL 12085063, at * (N.D.N.Y. Feb. 26, 2013) (lower court opinion noting that removal was based on diversity jurisdiction.).

5

556 U.S. at 60 ("Federal jurisdiction cannot be predicated on an actual or anticipated defense"); Duke Power Co. v. Carolina Environmental Study Grp., Inc., 438 U.S. 59, 97 (1978) (Rehnquist, J., concurring) ("It has long been established that the mere anticipation of a possible federal defense to a state cause of action is not sufficient to invoke the federal-question jurisdiction of the district courts.").

ASRRG cites the court to Restoration Risk Retention Group, Inc. v. Gutierrez, 880 F.3d 339 (7th Cir. 2018), and asserts that, like Gutierrez, "the complaint here raises a federal question concerning the applicability of the [LRRA]." Def.'s Response at 1. As the court noted in its Order to Show Cause, however, Gutierrez is materially distinguishable because that case was brought by a risk retention group under the LRRA. See Gutierrez, 880 F.3d at 345–46 (distinguishing Restoration Risk's assertion of "a federal right to operate within Wisconsin free from the restrictions of state regulation" on the face of its complaint from cases in which a party seeks federal subject matter jurisdiction "by simply anticipating an affirmative defense of preemption"). Despite giving ASRRG the opportunity to persuade the court that Gutierrez does apply in this case, see Order to Show Cause ("ASRRG is invited to submit argument as to the applicability of Gutierrez in this case"), ASRRG has failed to do so. Therefore, the court concludes that Gutierrez is inapposite.

Finally, the court acknowledges the "artful pleading" doctrine cited by ASRRG in its Response, implying that KeyBank has engaged in artful pleading in order to evade federal subject matter jurisdiction. See Def.'s Response at 5 n.5 (citing NASDAQ OMX Grp., Inc. v. UBS, Sec., LLC, 770 F.3d 1010, 1019 (2d Cir. 2014)). The "artful pleading" doctrine has been applied in the Second Circuit in cases where a state statute is

6

completely preempted by federal law or where complete preemption does not apply but "a plaintiff's state-law contract claims were construed as asserting rights arising only under federal tariffs." Sullivan v. American Airlines, Inc., 424 F.3d 267, 272 & n.4 (2d Cir. 2005). The court addresses complete preemption below. See infra Section IV(B). As to the second category, because the rights asserted by KeyBank are created by state statute and not federal law, the court finds that the artful pleading doctrine does not apply on that basis.

In light of the court's conclusion that KeyBank's Complaint does not necessarily raise a federal question, the court does not reach ASRRG's arguments as to the remaining factors for "arising under" jurisdiction, i.e., whether a federal issue is disputed and substantial and whether exercising jurisdiction would disturb a congressionally approved balance of authority. See, e.g., Merrill Lynch, 136 S. Ct. at 1569–70.

B. Preemption

It is well settled that a federal statute may preempt a state statute without providing a basis for federal subject matter jurisdiction. As the Second Circuit has held, there are three types of "ordinary defensive preemption," which do not create a basis for subject matter jurisdiction, including express preemption, conflict preemption, and field preemption. Wurtz v. Rawlings Co., LLC, 761 F.3d 232, 238 (2d Cir. 2014). Express preemption "occurs when 'Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision.'" Id. (quoting Arizona v. United States, 567 U.S. 387, 399 (2012)). The LRRA, which exempts risk retention groups from "any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would . . . make unlawful, or regulate, directly or indirectly, the operation of a risk retention group," expressly preempts risk retention groups from

7

certain state laws. 15 U.S.C. § 3902(a); see Soyoola v. Oceanus Ins. Co., 986 F. Supp. 2d 695, 703 (S.D.W.Va. 2013) (holding LRRA expressly preempts most state insurance laws). "As an ordinary defensive preemption claim, express preemption cannot support federal jurisdiction because it would not appear on the face of a well-pleaded complaint." Wurtz, 761 F.3d at 238.

In its Notice of Removal, ASRRG argues that the LRRA completely preempts Connecticut General Statutes section 38a-321. Under the doctrine of complete preemption, federal subject matter jurisdiction is created "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003). However, complete preemption is limited to statutes that do not "just . . . provide a federal defense to a state law claim <u>but also</u> to <u>replace the state law claim with a federal law claim</u> and thereby give the defendant the ability to seek adjudication of the claim in federal court." Wurtz, 761 F.3d at 238; see Sullivan, 424 F.3d at 276 ("[R]emoval of state-law claims based on complete preemption becomes possible not solely by virtue of the preemptive force of a substantive federal statute . . . , but rather because a federal statute with completely preemptive force <u>also gives rise to original federal jurisdiction</u>, and as a consequence allows removal under 28 U.S.C. § 1441." (emphasis added)).

In its Notice of Removal, ASRRG states as follows with respect to the existence of a private right of action under the LRRA:

> Congress has spoken on whether a private right of action exists under the LRRA: it does not. There is nothing in the LRRA that creates any rights, and certainly not rights of non-members or entities that are not contractual insureds, in third-parties to ASRRG.

8

Notice of Removal at 5.  In its Response to the court's Order to Show Cause, in which the court brought to ASRRG's attention case law that limits complete preemption to statutes that create a federal cause of action, however, ASRRG states that "it is as yet <u>undetermined</u> in this Circuit whether the LRRA provides an implied right of action in third-party claimants" and "[w]hile ASRRG maintains that the LRRA does not create a private right of action—express or implied—as noted, it is an open question in the Second Circuit."  Def.'s Response at 8–9 & n.8.  However, neither the statute itself nor interpreting case law offers any support for the court to find an implied right of action.  <u>See</u> <u>Garcia v. Nat'l Contractors Ins. Co., Inc.</u>, No. 15-CV-1332 (CBA) (MDG), 2015 WL 7016968, at *2 (E.D.N.Y. Nov. 12, 2015) ("[T]he LRRA does not provide a private right of action against risk retention groups . . . .").

Furthermore, the Second Circuit has strongly suggested that the LRRA does not create a federal cause of action, but rather limits state regulation to the risk retention group's domiciliary state.  <u>See</u> <u>Wadsworth</u>, 748 F.3d at 103 (noting that the LRRA's preemptive effect "is not universal" but rather "secures the authority of the domiciliary, or chartering, state to 'regulate the formation and operation' of risk retention groups" and, "therefore, functions not in aid of a comprehensive <u>federal</u> regulatory scheme, but rather to allow a risk retention group to be regulated by the state in which it is chartered" (quoting 15 U.S.C. § 3902(a)(1)) (emphasis added)).  Therefore, the court concludes that there is no federal cause of action in the LRRA such that the LRRA could completely preempt state law.

Although ASRRG suggests that a private cause of action might exist such that the LRRA satisfies the complete preemption doctrine, as articulated in <u>Wurtz</u>, ASRRG's

9

primary argument is that a private cause of action should not be a prerequisite to complete preemption. See, e.g., Def.'s Response at 8 ("[W]here a federal appellate court has determined that the federal statute so occupies the field such that a state law claim does not exist, the conclusion is warranted that Congress intended to completely preempt the state law cause of action, regardless of whether the statute provides for any causes of action."); id. at 9 ("[I]t would be incongruous with the policy behind complete preemption to permit the plaintiff's claims here to proceed in state court simply because the LRRA does not expressly provide for a private right of action."); id. at 10 ("Complete preemption serves the purpose of ensuring that state law does not expand on rights not provided for by Congress, regardless of whether there is a federal cause of action.").

As ASRRG acknowledges, these arguments amount to a request that this court "depart from Wurtz."[2] Id. at 8. However, Wurtz is a Second Circuit opinion binding on this court absent an intervening decision from the Supreme Court or the Second Circuit en banc that overrules Wurtz, explicitly or implicitly. See, e.g., In re BioScrip, Inc. v. Secs. Litig., 273 F. Supp. 3d 474, 491 (S.D.N.Y. 2017); see also Union of Needletrades,

---

[2] ASRRG's request that this court "depart from Wurtz" creates the misleading impression that Wurtz created the requirement for complete preemption that the federal statute in question have a cause of action. In Beneficial National Bank, however, the Supreme Court noted that complete preemption had been narrowly applied to two federal statutes, which "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." 539 U.S. at 8. The Second Circuit has interpreted this language in Beneficial National Bank as

> mak[ing] clear an aspect of the complete-preemption doctrine that is often overlooked: removal of state-law claims based on complete preemption becomes possible not solely by virtue of the preemptive force of a substantive federal statute such as the LMRA, ERISA, or the National Bank Act, but rather because a federal statute with completely preemptive force also gives rise to original federal jurisdiction, and as a consequence allows removal under 28 U.S.C. § 1441.

Sullivan, 424 F.3d at 276 (emphasis added).

10

Indus. & Textile Employees v. U.S. I.N.S., 336 F.3d 200, 210 (2d Cir. 2003) (noting that a panel of the Second Circuit is also bound by a prior panel decision absent an intervening Supreme Court decision that, at a minimum, "casts doubt on [the] controlling precedent"). The court is aware of no such intervening decision or decisions, and ASRRG has not argued, much less demonstrated, that such a decision exists. Therefore, the court concludes that Wurtz is controlling and forecloses ASRRG's argument that the LRRA completely, as opposed to expressly, preempts state law. Furthermore, because the LRRA does not completely preempt the claims asserted by KeyBank in its Complaint, the court further concludes that the "artful pleading" doctrine does not apply here. See supra Section IV(A).

C. Diversity Jurisdiction

In a footnote in its Response and at greater length in its Sur-Reply, ASRRG argues that the court has diversity jurisdiction over this case "inasmuch as [ASRRG] is not an 'insurance company'" under Connecticut General Statute section 38a-321.[3] See Def.'s Response at 2 n.1. Under title 28 section 1332 of the United States Code, federal district courts have jurisdiction over cases in which the amount in controversy exceeds $75,000, which is not disputed, and where there is complete diversity of citizenship between the parties. However, as ASRRG acknowledges, title 28 section 1332(c)(1) of the United States Code states that an "insurer" assumes the citizenship of its insured. See 28 U.S.C. § 1332(c)(1) ("[I]n any direct action against the insurer of a

---

[3] The parties also dispute whether ASRRG can assert diversity jurisdiction as a basis for federal subject matter jurisdiction in light of ASRRG's failure to plead diversity jurisdiction in its Notice of Removal. See Pl.'s Reply at 5; Def.'s Sur-Reply at 5–7; see also Defendant's Notice on Removed Cases (Doc. No. 12) at ¶ 3 ("This is not a diversity case"). Because the court concludes that there is not complete diversity between the parties, the court does not reach the issue of whether ASRRG's diversity jurisdiction arguments are untimely.

policy or contract of liability insurance . . . to which action the insured is not joined as aparty-defendant, such insurer shall be deemed a citizen of every State and foreign state of which the insured is a citizen."). ASRRG asserts that its citizenship is Vermont, while KeyBank's citizenship is Connecticut. See Def.'s Response at 2 n.1.

ASRRG's only argument regarding its status as an "insurer" is that it is not an "insurance company" under the Connecticut direct action statute. Id. Assuming, without deciding, that ASRRG's characterization of its status under Connecticut law is correct, the court knows of no reason why the term "insurer" in section 1332 should be interpreted pursuant to a Connecticut statute. To the contrary, the LRRA, under which ASRRG was established, defines "risk retention group" as a "corporation or other limited liability association whose primary activity consists of assuming, and spreading all, or any portion, of the liability exposure of its group members" and "which is chartered or licensed as a liability insurance company under the laws of a State or authorized to engage in the business of insurance under the laws of such State." 15 U.S.C. § 3901(a)(4)(A), (C). The LRRA argues that risk retention groups may provide "liability insurance" or "reinsurance with respect to the similar or related liability exposure of any other risk retention group," id. at § 3901(a)(4)(G), and that owners of a risk retention group must be "provided insurance by such group," id. at § 3901(a)(4)(E). Based on the language of the LRRA, ASRRG is clearly an "insurer." See also Wadsworth, 748 F.3d at 102 n.1 ("A risk retention group is a liability insurance company owned and operated by its members, and those members are its insureds." (emphasis added)). On that basis, the court concludes that ASRRG is a citizen of Connecticut for the purposes of section 1332.

policy or contract of liability insurance . . . to which action the insured is not joined as aparty-defendant, such insurer shall be deemed a citizen of every State and foreign state of which the insured is a citizen."). ASRRG asserts that its citizenship is Vermont, while KeyBank's citizenship is Connecticut. See Def.'s Response at 2 n.1.

ASRRG's only argument regarding its status as an "insurer" is that it is not an "insurance company" under the Connecticut direct action statute. Id. Assuming, without deciding, that ASRRG's characterization of its status under Connecticut law is correct, the court knows of no reason why the term "insurer" in section 1332 should be interpreted pursuant to a Connecticut statute. To the contrary, the LRRA, under which ASRRG was established, defines "risk retention group" as a "corporation or other limited liability association whose primary activity consists of assuming, and spreading all, or any portion, of the liability exposure of its group members" and "which is chartered or licensed as a liability insurance company under the laws of a State or authorized to engage in the business of insurance under the laws of such State." 15 U.S.C. § 3901(a)(4)(A), (C). The LRRA argues that risk retention groups may provide "liability insurance" or "reinsurance with respect to the similar or related liability exposure of any other risk retention group," id. at § 3901(a)(4)(G), and that owners of a risk retention group must be "provided insurance by such group," id. at § 3901(a)(4)(E). Based on the language of the LRRA, ASRRG is clearly an "insurer." See also Wadsworth, 748 F.3d at 102 n.1 ("A risk retention group is a liability insurance company owned and operated by its members, and those members are its insureds." (emphasis added)). On that basis, the court concludes that ASRRG is a citizen of Connecticut for the purposes of section 1332.

Furthermore, as noted above, ASRRG asserts that Keybank is a citizen of Connecticut pursuant to section 1332(c)(2), which states that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2); see Def.'s Response at 2 n.1. Keybank does not dispute this characterization of its citizenship. Therefore, the court concludes that the parties are not diverse and diversity jurisdiction is not a basis for federal subject matter jurisdiction. See, e.g., Herrick Co., Inc. v. SCS Comms., Inc., 251 F.3d 315, 322–23 (2d Cir. 2001) ("[I]t is well established that '[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." (quoting Advani Enter., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 160 (2d Cir. 1998))).

## V.  CONCLUSION

For the reasons stated above, the court concludes that it lacks federal subject matter jurisdiction over this case. Therefore, the case is **REMANDED TO STATE COURT**. The Clerk is directed to close this case.

**SO ORDERED.**

Dated this 21st day of May 2018 in New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge